United States Varnish Tile Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 15069. Promulgated April 11, 1929.

*Andrew C. Frommelt, C. P. A.*, for the petitioner.
*Arthur Carnduff, Esq.*, for the respondent.

OPINION.

LOVE: The taxes in controversy are income and excess-profits taxes for the calendar years 1920, 1921, and 1922, in the sum of $3,369.44. The issue is specifically raised on the taxes for 1920, amounting to $2,885.09, and it was verbally stipulated at the hearing that the small amounts for the other years shall stand or fall with our decision for that year.

The petitioner is a New Jersey corporation, with its principal office in Paterson. It manufactures "varnished tile" wall paper. The petitioner alleges, first, improper reductions of invested capital in the amount of $5,140 " on account of appreciation of copper rolls," which bear on their surfaces the engraved designs of the papers to be printed from them; and, second, the failure of the Commissioner to allow proper depreciation for the years involved of certain other assets. An account for the cost of the copper rolls themselves and a separate account for the cost of engraving them were maintained upon the books—the total of the two representing the cost of the completed rolls. At the end of each year those still in use were inventoried at cost or market, whichever was lower, and the remainder charged to surplus through expense and profit and loss.

Petitioner claims that in the years prior to March 1, 1913, " due to erroneous bookkeeping practice," it reduced its book assets by credits to the accounts of " Factory Building," " Furniture and Fixtures " and " Machinery " and corresponding charges to surplus; and that on December 31, 1913, the machinery account was further reduced by a $10,000 write-off to surplus.

No books of account, inventories or other documents were offered in evidence, but certain testimony was given from the corporation's ledger.

Frederick A. Weiss was its vice president and treasurer since the organization of the company in 1908. He kept the books of the company from the date of organization and made every entry in the ledger. He was the sole witness in the case. He testified, not from the corporation's books, but from his own independent knowledge, that the engraved copper rolls in use at December 31, 1919, were worth and were inventoried at that date on the basis of cost or market, whichever was lower, at approximately $18,000. We place full reliance upon his testimony in this matter and give it conclusive weight. He had been the company's vice president, treasurer and bookkeeper since it was organized, a period of more than 10 years at December 31, 1919, and was familiar with its affairs. It does not appear whether or not he had purchased these copper rolls, but he had made the entries in connection with such purchases and must have been

aware of their cost. He states unequivocally that in each case the inventory was taken under his direction and supervision at cost or market, whichever was lower. His testimony on cross-examination shows that that portion of the engraved copper rolls included in the inventory was "what we call our line, our present line of goods, the line that we are selling that year." That being so, it is of no moment that the cost of those engraved rolls was carried in the petitioner's books in two accounts rather than in one. Its net income subject to tax would be identical in either case. In his brief, counsel for the petitioner asserts an inventory value for such engraved rolls at $18,988.20. We have before us no inventory or other evidence showing the amount claimed. The witness placed the value at "approximately $18,000" and we can not find a value in excess of that amount.

It is proper here to draw attention to what is an apparent inadvertence or a confusion of terms. The petitioner's allegation of error is based upon the Commissioner's disallowance of an "appreciation of copper rolls." There is here no "appreciation" in the ordinary interpretation of that word as an unearned increment of value. We are dealing with an actual value added to the rolls by the cost of engraving them with the designs of the wall paper to be printed therefrom. The rolls were worth more and had cost more after the process of engraving, and it is proper that they should be taken into the inventory at that enhanced value; but under the method of inventorying practiced by this petitioner, no "appreciation" such as might result from, say, an advance in the price of copper, could possibly find any place in the petitioner's invested capital, and therefore no disallowance of it could take place; but we conceive it unjust to deny the allegation as made, on a ground so purely theoretical and technical. In this respect this case is differentiated from that of *Comstock-Castle Store Co.*, 4 B. T. A. 114, where we sustained the Commissioner in a disallowance of a purely arbitrary appreciation or inflation of value written on the books in accordance with an *ex-cathedra* declaration of the taxpayer's board of directors.

Upon this issue we find that the value of the engraved copper rolls in question was $18,000 at December 31, 1919.

The efforts of the petitioner to prove the error asserted were directed toward the establishment of its contention that, due to its own errors in 1913 and prior years, its book assets had wrongfully been reduced, with the secondary result that in 1920 it had been deprived of the full amount of invested capital and of depreciation to which it was entitled.

No attempt was made to establish a March 1, 1913, value or a value at any other time. So far as we were able to divine, the effort was to restore to the book values of the assets the amounts by which they had been reduced by charges to surplus; to restore to "Factory Building and Real Estate," $17,791 "arbitrarily written off" on June 14, 1911; to restore to "Machinery," $7,363.20 "arbitrarily credited" on June 14, 1911, and $10,000 on December 31, 1913; and to restore to "Furniture and Fixtures," $489.10 "arbitrarily credited" on June 30, 1910.

Although the witness testified from a book said to be the ledger of the corporation, such book was not placed in evidence as an exhibit, so that even though such restorations were permitted we would still be without knowledge, much less competent proof, of the cost of these assets or their value at any date, admitting for argument that such cost or value could be proved from the ledger, alone. In regard to the single item of "Furniture and Fixtures," the witness said that the amount of this asset that was "taken over" at the time of organization was $200; that prior to June 30, 1910, "the books showed" an asset value of $489.10, and that on that date the entire amount was charged off to profit and loss. Not even that much explanation was offered in connection with the factory building or the machinery. From the only facts and all the facts that are before us, it is impossible to determine that the assets under consideration had any value greater than that assigned to them by the Commissioner, or that he erred in applying to them whatever rates of depreciation that he did apply, but which remain unknown to us. We find for the respondent upon this issue.

*Judgment will be entered under Rule 50.*